1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3

4    The United States of America, )
                      Plaintiff,    )
5                                   )
                                    )
6    vs.                            ) Case No. CR 06-40019-FDS-1
                                    )
7                                   )
     Derrick Anthony Watters,       )
8                      Defendant.   )

9

10   BEFORE:  The Honorable F. Dennis Saylor, IV

11

12                              Rule 11

13

14

15                              United States District Court
                                Courtroom No. 2
16                              595 Main Street
                                Worcester, Massachusetts
17                              August 29, 2007

18

19

20

21

22
                      Marianne Kusa-Ryll, RDR, CRR
23                      Official Court Reporter
                      United States District Court
24                      595 Main Street, Room 514A
                      Worcester, MA 01608-2093
25                            508-929-3399
                  Mechanical Steno - Transcript by Computer

```
1    APPEARANCES:

2    United States Attorney's Office
     By Christopher Bator, Assistant U.S. Attorney
3    595 Main Street
     Worcester, Massachusetts 01608
4    for the Plaintiff

5    Irwin Kwiat, Esquire
     P.O. Box 60154
6    Worcester, Massachusetts 01606-0154
     for the Defendant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2

3              THE CLERK:  All rise.

4              Court is now open.  You may be seated.

5              Case No. 06-40019, United States versus Derrick

6       Watters.

7              Counsel, please note your appearance for the record.

8              MR. BATOR:  Good morning, your Honor.  Christopher

9       Bator, for the United States.

10             THE COURT:  Good morning.

11             MR. KWIAT:  Good morning, your Honor.  Irwin Kwiat,

12      for Derrick Watters.

13             THE COURT:  All right.  Good morning.

14             MR. KWIAT:  Your Honor, we have a matter that we'd

15      like to approach on before we proceed, if it's all right with

16      you.

17             THE COURT:  All right.

18             MR. KWIAT:  Thank you.

19             (Sealed portions, pages 3 to 5, under separate cover.)

20

21

22

23

24

25





1          THE COURT:  Well, let me just -- I'll speak somewhat

2    elliptically.  As a follow-on to our discussion at sidebar,

3    Mr. Bator raised disclosure in the Superior Court.  I'm not

4    going to limit that disclosure.  The -- the -- the government

5    may make whatever disclosure is appropriate to whomever persons

6    may be appropriate.

7          MR. BATOR:  Thank you.

8          THE COURT:  That is not prosecution or defense only or

9    the court only.  I'm making no judgment as to how that

10   disclosure ought to occur.

11          All right.  This is -- we're here for a change of

12   plea, pursuant to a plea agreement and a Rule 851 information;

13   is that correct, Mr. Bator?

14          MR. BATOR:  That is correct, your Honor.

15          THE COURT:  All right.  The defendant may take the

16   stand.

17          Mr. Kwiat, you may join him up there.

18          THE CLERK:  Please raise your right hand.

19                    DERRICK WATTERS, SWORN

20          THE CLERK:  Please be seated.

21          THE COURT:  Do you understand that you are now under

22   oath and that if you answer any of my questions falsely, your

23   answers may later be used against you in another prosecution

24   for perjury or making a false statement?

25          THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  I'm going to ask you to move the

2     microphone a little closer or move your head closer to the

3     microphone.

4          What is your full name?

5          THE DEFENDANT:  Derrick Anthony Watters.

6          THE COURT:  How old are you?

7          THE DEFENDANT:  Twenty-nine.

8          THE COURT:  How far did you go in school?

9          THE DEFENDANT:  Ninth grade.

10         THE COURT:  Are you a citizen of the United States?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Have you been treated recently for any

13    mental illness or psychiatric or psychological problem?

14         THE DEFENDANT:  No.

15         THE COURT:  Have you been treated recently for any

16    drug addiction or drug or alcohol problem of any kind?

17         THE DEFENDANT:  No, your Honor.

18         THE COURT:  As you sit here today, are you under the

19    influence of any drug or medication or alcoholic beverage of

20    any kind?

21         THE DEFENDANT:  No.

22         THE COURT:  Have you received a copy of the indictment

23    pending against you, that is, the written charges made against

24    you in this case?

25         THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Have you had a chance to fully discuss the

2    charges against you and the facts and circumstances of your

3    case with Mr. Kwiat as your lawyer?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Are you fully satisfied with the counsel

6    and representation and advice given to you in this case by your

7    attorney, Mr. Kwiat?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  Do you understand that you

10   have entered into a plea agreement with the United States

11   Government?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Did you sign it?

14         THE DEFENDANT:  Yes.

15         THE COURT:  And is that your signature on the last

16   page of the agreement?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  Is that the only agreement that you have

19   with the United States Government?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  In other words, there's no other different

22   agreement or side agreement of any kind?

23         THE DEFENDANT:  No.

24         THE COURT:  Okay.  Mr. Bator, would you please

25   summarize the plea agreement; and if need be, you may do so

1    under seal.

2           MR. BATOR:  I think that would probably be best, your

3    Honor, just to --

4           THE COURT:  All right.  Why don't we designate this

5    portion of the transcript then as being under seal, and there's

6    no spectator present in the courtroom.

7           (Sealed portions, pages 10 to 13 under separate

8    cover.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25









1         THE COURT:  Okay.  Do you feel that you understand the

2   terms of the plea agreement?

3         THE DEFENDANT:  Yes, sire.

4         THE COURT:  And you've had a chance to talk about them

5   with Mr. Kwiat, as your lawyer?

6         THE DEFENDANT:  Yes, sir.

7         THE COURT:  All right.  Has anyone attempted in any

8   way to force you to plead guilty in this case?

9         THE DEFENDANT:  No, sir.

10        THE COURT:  Are you pleading guilty of your own free

11   will, because you are, in fact, guilty?

12        THE DEFENDANT:  Yes, sir.

13        THE COURT:  Do you understand that the offenses to

14   which you are pleading guilty are felonies?

15        THE DEFENDANT:  Yes, sir.

16        THE COURT:  Do you understand that if I accept your

17   plea, you will be adjudged guilty of those offenses?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  And do you understand that by being

20   adjudged guilty, you may lose valuable civil rights, such as

21   the right to vote, the right to hold public office, the right

22   to serve on a jury, and the right to possess a gun or any other

23   kind of firearm?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  Mr. Bator, would you please state the

1   maximum possible penalty provided by law and any applicable

2   mandatory minimum penalty.

3            MR. BATOR:  Yes, your Honor.

4            On Count One, the count charging possession with

5   intent to distribute cocaine base, the maximum period of

6   incarceration is life.  There is a minimum mandatory period of

7   incarceration of 10 years; supervised release of at least eight

8   years, with a maximum of life; a fine of up to $4 million; and

9   a mandatory special assessment of $100.

10           Concerning Count Two, a felon in possession of a

11   firearm and ammunition charge, the maximum penalty is life.

12   This presumes, by the way -- the government believes, and I

13   bel -- and what the pre plea presentence reports, I think,

14   strongly suggests that on Count Two, the defendant qualifies as

15   an armed career criminal.  If that's the case, the maximum

16   penalty's life imprisonment.  There's a minimum mandatory

17   period of incarceration of 15 years; a period of supervised

18   release of three years; a fine of $250,000; and the mandatory

19   special assessment of $100.

20           THE COURT:  All right.  Mr. Watters, do you understand

21   that on Count One, which is the drug count, that you're facing

22   a maximum term of imprisonment of life?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  And do you understand you're also facing a

25   mandatory minimum term of imprisonment on that count of 10

1    years?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  And do you understand that on Count Two,

4    which is the gun count, that you're facing a maximum term of

5    life as well?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  And that on Count Two, if you qualify as

8    what's called an armed career criminal, based on your previous

9    convictions, that you're facing a mandatory minimum prison term

10   of 15 years?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Do you understand that in addition, you're

13   facing a fine on Count One of up to $4 million?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  And do you understand that on Count Two

16   you're facing a fine of up to $250,000?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  And do you understand that you're also

19   facing a term of supervised release on Count One of at least

20   eight years and up to life?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  And do you understand that on Count Two,

23   you're facing a term of supervised release of up to three

24   years?

25           THE DEFENDANT:  Yes, sir.

1          THE COURT:  Do you understand that if you violate the

2     conditions of your supervised release, you could be given

3     additional time in prison?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  All right.  Do you understand that under

6     the agreement with the government, you'll be required to

7     forfeit certain property, money and firearm and ammunition?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  All right.  And do you also understand

10    that in addition to everything else, you'll be required to pay

11    a special assessment of $100 on each count, for a total of

12    $200?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Do you understand all those possible

15    consequences of pleading guilty here today, that is,

16    imprisonment, a fine, a term of supervised release, a

17    forfeiture consequence, and a mandatory special assessment of

18    $200?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  I now want to talk to you about the United

21    States Sentencing Guidelines and how they might affect your

22    sentence.

23         As I've indicated, it appears you're subject to

24    mandatory minimum sentences on both counts.  Your sentence is

25    also likely to be affected by the United States Sentencing

1   Guidelines.

2         The sentencing guidelines have been issued by the

3   United States Sentencing Commission for judges to follow in

4   determining the sentence in a criminal case.  They are not

5   mandatory.  That means I don't have to follow them, but

6   nonetheless, they're important, and I'll give them substantial

7   weight in determining your sentence.

8         Have you and your attorney talked about the sentencing

9   guidelines and how they might apply to your case?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  Do you understand that I will not be able

12  to determine your sentence under the guidelines until after a

13  presentence report has been completed?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  And do you understand that that

16  presentence report will contain information about you and your

17  prior convictions and the facts of your case?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  And do you understand that the presentence

20  report will also recommend an application of the sentencing

21  guidelines?

22        THE DEFENDANT:  Yes, sir.

23        THE COURT:  And do you understand that both you and

24  the government will have the opportunity to challenge the facts

25  and information set forth in that report and the application of

1   the guidelines, recommended by the probation officer?

2           THE DEFENDANT:  Yes, sir.

3           (Sealed portion, page 20, under separate cover.)



1          THE COURT:  And do you understand that you will not be

2     permitted to withdraw your plea of guilty, because your

3     sentence is longer than what you expected, or because you're

4     unhappy with your sentence, or because it's different from any

5     sentence your attorney might have predicted?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Do you understand that parole has been

8     abolished and that if you are sentenced to prison, you will not

9     be released on parole?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Do you understand that under some

12     circumstances, the government can appeal any sentence that I

13     impose?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  And do you understand that you have waived

16     your right to challenge your conviction, either on direct

17     appeal or later, what's called a collateral challenge?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  In other words, you not only cannot appeal

20     your plea of guilty, your conviction, if I accept it directly,

21     but in the future you can't challenge it in what's called a

22     habeas corpus proceeding, or another kind of challenge.

23          Do you understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  And do you further understand that if I

1   grant a motion for a downward departure, based on your

2   cooperation, or otherwise, and if I do, in fact, give you a

3   lower sentence as a result, that you've also waived your right

4   to appeal any sentence I impose under those circumstances?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And do you further understand that not

7   only would you waive -- have you waived the right to appeal

8   such a sentence, but you can't challenge it later, again, by

9   means of the habeas corpus process or otherwise?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Okay.  Do you understand that you have the

12   right to plead not guilty to any offense charged against you

13   and to go to trial?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Do you understand that at -- that you have

16   the right to a trial by jury?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Do you understand that at such a trial,

19   you would be presumed to be innocent, and the government would

20   have to prove your guilt beyond a reasonable doubt?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Do you understand that at such a trial you

23   would have the right to the assistance of counsel for your

24   defense?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  Do you understand that at such a trial you

2    would have the right to see and hear all the witnesses and have

3    them cross-examined in your defense?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Do you understand that you would have the

6    right to require witnesses to appear at the trial and testify?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Do you understand that at such a trial you

9    would have the right to refuse to testify unless you elected to

10   do so?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  And do you understand that if you decided

13   not to testify or not to put on any evidence that those facts

14   could not be used against you?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  And do you understand that by entering a

17   plea of guilty here today, if I accept your plea, there will be

18   no trial, and you'll have waived your right to a trial?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Okay.  Mr. Bator, would you please

21   summarize the two charges against the defendant, describing the

22   essential elements of each offense charged.

23         MR. BATOR:  Yes, your Honor.

24         Count One charges the defendant with -- on

25   February -- on or about February 1, 2006, having possessed with

1    intent to distribute cocaine base in violation of 21 USC, 841

2    (a)(1).

3            The elements of that crime are that on or about that

4    date, the defendant knowingly and intentionally possessed, with

5    intent to distribute, cocaine base, also known as crack

6    cocaine, a Schedule II controlled substance.

7            The indictment also alleges that, as provided for in

8    the plea agreement, that the amount possessed with intent to

9    distribute on or about that date was more than 5 grams and less

10   than 20 grams.

11           With regard to Count Two, the defendant charges -- is

12   charged with a violation of 18 USC, Section 922(g)(1), being a

13   previously convicted felon in possession of a firearm and

14   ammunition.

15           The elements of that crime are that on or about the

16   date in question, February 1, 2006, the defendant knowingly

17   possessed a firearm and ammunition.  He did so in or affecting

18   commerce, meaning that prior to that date, the firearm and the

19   ammunition had previously crossed state or international

20   boundaries, and that prior -- also prior to that date in

21   question, February 1, 2006, the defendant had been convicted of

22   a felony crime, which is a crime punishable by a term of

23   imprisonment greater than one year.

24           THE COURT:  All right.  Mr. Watters, do you understand

25   what the government would have to prove beyond a reasonable

1    doubt in order for you to be found guilty at the trial?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  All right.  Mr. Bator, would you please

4    state the factual basis for the plea, that is, what the

5    government would be prepared to prove if this case were to go

6    to trial.

7            MR. BATOR:  Yes, your Honor.

8            The government would expect to prove, in somewhat

9    summary, that -- at trial the following:  That on or

10   about -- in or about January of 2006, Massachusetts State

11   Police Officers assigned to the Worcester County Detective Unit

12   Narcotics Unit received an investigation that the defendant,

13   Mr. Watters was trafficking illegal drugs in and around

14   Worcester, Massachusetts.

15           On January 31, 2006, the State Police obtained a state

16   search warrant from the Worcester District Court for

17   Mr. Watters' residence, located at 373 Mill Street,

18   Apartment 5A, in Worcester.

19           On February 1, 2006, Massachusetts State Police were

20   conducting surveillance at that location, 373 Mill Street, and

21   observed the defendant, Mr. Watters, leave the residence and

22   drive off in a Cadillac Escalade.  At the time, officers were

23   aware that Mr. Watters' driver's license had been revoked and

24   that it was unlawful for him to operate the motor vehicle at

25   that time.

1          Officers followed Mr. Watters to a parking lot near

2     the area of 180 Institute Road, in Worcester, Mass., and saw

3     Mr. Watters' car pull up alongside a brown Nissan Pathfinder.

4     An unidentified male got out of the Pathfinder and got into

5     Mr. Watters' vehicle.

6          Officers believed, based on their training and

7     experience, that what was occurring at that time may -- was a

8     drug transaction.  Officers approached the Cadillac Escalade,

9     asked Mr. Watters to step out of the vehicle, asked if he had a

10    valid driver's license, and Mr. Watters responded that his

11    license had been revoked.

12         Mr. Watters was arrested for operating a motor vehicle

13    after revocation.  He was advised of his rights; and upon

14    searching Mr. Watters, officers recovered four individually

15    wrapped baggies, packaged for sale, each containing a

16    substance, which was subsequently determined to be crack

17    cocaine, or cocaine base, as well as $101 in United States

18    currency.

19         Investigators interviewed the passenger, after

20    advising him -- the other individual, who had come out of the

21    other automobile -- after advising him of his rights.  He

22    identified himself as Troy Neeley and admitted that he was in

23    the process of purchasing crack cocaine from Mr. Watters at

24    that time.  Mr. Neeley also admitted that the $60 found in the

25    console of Mr. Watters' Escalade was the money that Mr. Neeley

1    had used to purchase the crack cocaine.

2         Also, on that date, immediately after this, police

3    officers executed the search warrant at Mr. Watters' residence,

4    373 Mill Street, Apartment 5A.  Mr. Watters was brought to the

5    location -- to the location, shown the search warrant, was

6    again advised of his rights.  He indicated that he understood

7    them.  Mr. Watters indicated that all of the items inside the

8    apartment, where all the items had been found, belonged to him;

9    and during the search of the residence, officers found, among

10    other things, an Intratec Model TEC-DC9 .9 millimeter pistol,

11    serial number D023582, with a magazine and 32 rounds of

12    ammunition, some additional quantities of crack cocaine and

13    marijuana, and drug paraphernalia, in addition to mar -- a gun

14    magazine, and approximately $1,500 in United States currency,

15    and various documents of identification belonging to

16    Mr. Watters.

17         The items were subsequently fingerprinted at the

18    Massachusetts State Police Crime Lab.  A latent fingerprint

19    belonging to Mr. Watters was found on one of the .9 millimeter

20    magazines.

21         The controlled substances were submitted to the Mass.

22    State Police Crime Lab for drug analysis and determined to be

23    17.97 grams of cocaine base, also known as crack cocaine.

24         Finally, your Honor, before the date in question,

25    February 1, 2006, Mr. Watters had been convicted in a court of

1   a felony crime, that is, a crime punishable by a term of

2   imprisonment of greater than one year.

3          And the Intratec 9 -- Intratec Model TEC-DC9

4   .9 millimeter pistol and the recovered -- ammunition recovered

5   from Mr. Watters' residence were both manufactured outside of

6   Massachusetts and, therefore, had traveled in interstate

7   commerce into Massachusetts prior to February 1st of 2006, the

8   date in question.

9          That, in summary, your Honor, would be what the

10   government would expect to prove if the matter went to trial.

11          THE COURT:  All right.  Mr. Watters, do you disagree

12   with anything in the government's description of the facts?

13          THE DEFENDANT:  No, your Honor.

14          THE COURT:  Do you agree that the drugs for which

15   you're responsible consisted of cocaine base in the form of

16   crack cocaine?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  And do you agree that the amount

19   attributable to you is at least 5 grams, but less than 20 grams?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  All right.  At this time then I'm prepared

22   to take the change of plea.

23          THE CLERK:  Please stand.

24          Derrick Watters, on Criminal No. 06-40019, on Counts

25   One and Two of a two-count indictment, you have previously pled

1     not guilty.

2              Do you now wish to change your plea?

3              THE DEFENDANT:  Yes.

4              THE CLERK:  What say you now as to Count One, guilty

5     or not guilty?

6              THE DEFENDANT:  Guilty.

7              THE CLERK:  As to Count Two, guilty or not guilty?

8              THE DEFENDANT:  Guilty.

9              THE CLERK:  You may be seated.

10             THE COURT:  It is the finding of the Court in the case

11    of the United States versus Derrick Watters that the defendant

12    is fully competent and capable of entering an informed plea;

13    that the defendant is aware of the nature of the charges and

14    the consequences of the plea; and that the plea of guilty is a

15    knowing and voluntary plea, supported by an independent basis

16    in fact, containing each of the essential elements of the

17    offenses charged.

18             The plea is, therefore, accepted, and the defendant is

19    now adjudged guilty of those offenses.

20             Mr. Watters, as I indicated, a written presentence

21    report will be prepared by Probation to assist me in

22    determining your sentence.

23             You will be asked to give information for that report.

24    Your attorney may be present, if you wish.  It's important that

25    the report be accurate.  It will determine, among other things,

1   where you are sent to prison and what happens to you when you

2   get there.  No mistake is too small to correct; so, read it

3   carefully.

4          You will have an opportunity, of course, to read the

5   report, as will your lawyer, and you'll have an opportunity to

6   file any objections to the report before the time of

7   sentencing.  And both your counsel and you will have the

8   opportunity to speak on your behalf at the time of sentencing.

9          I'm, therefore, going to refer you to the probation

10  office for a presentence investigation and report.  I recognize

11  that this date may change for reasons previously discussed, but

12  I will set the disposition date for sentencing for Tuesday,

13  November the 20th, 2007, at 2:00 p.m., in Boston.  I'm going to

14  be presiding over a long trial in Boston at that time, and so

15  the sentencing will be there.

16         Is there any problem with that date, recognizing that

17  it may move?  Mr. Bator?

18         MR. BATOR:  Not from the government, your Honor.

19         THE COURT:  Mr. Kwiat?

20         MR. KWIAT:  No, your Honor.

21         THE COURT:  All right.  Pursuant to 18 USC

22  Section 3143, I will order that the defendant remain detained,

23  pending imposition of the sentence.

24         Let me turn then to the 851.  The United States has

25  filed an information under 21 United States Code, Section 851,

1    giving notice that at the sentencing of the defendant, Derrick

2    Watters, the government will seek increased punishment by

3    reason of the following two criminal convictions:  The first is

4    Worcester District Court Docket No. 9962-CR-4965.  The offense

5    was possession with intent to distribute a Class B substance,

6    cocaine.  The conviction date being December the 8th, 1999.

7            The second conviction is Worcester Superior Court

8    Docket No. WORC 2004-020841.  The offense is possession with

9    intent to distribute Class D substance, marijuana, and a

10   conviction date of May 12, 2005.

11           Mr. Watters, I'm required to inquire of you whether

12   you affirm or deny that you have been previously convicted as

13   alleged in the information?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  You agree that you were previously

16   convicted as alleged?

17           THE DEFENDANT:  Yes.

18           THE COURT:  All right.  I am required to inform you

19   that any challenge to those convictions that is not made before

20   sentence imposed may not be thereafter raised to attack the

21   sentence.

22           Is there anything further on the 851, Mr. Bator?

23           MR. BATOR:  I don't believe so, your Honor.

24           THE COURT:  Mr. Kwiat?

25           MR. KWIAT:  No.

1       THE COURT:  All right.  Just for the record, because I

2   wasn't clear, I'm going to order that the following portions of

3   the transcript be sealed: the colloquy concerning the plea

4   agreement itself, including, of course, the summary of the plea

5   agreement; the colloquy concerning the sentencing guidelines

6   and the presentence report and the waiver of appeal; and

7   otherwise, the transcript will be not sealed; and if there's

8   any question in that regard, please bring it to the attention

9   of the Court, if there's an issue concerning preparation of a

10  transcript or release of the transcript.

11       Mr. Bator.

12       MR. BATOR:  Your Honor --

13       THE COURT:  Oh, and the plea agreement itself, of

14  course, is under seal.

15       MR. BATOR:  And may I assume that with regard

16  to -- that the Court's statements with regard to release of the

17  transcript are similar to those with regard to release of the

18  plea agreement with regard to the matter --

19       THE COURT:  Yes.

20       MR. BATOR:  -- referred to at sidebar?

21       THE COURT:  Yes.  That is, they --

22       MR. KWIAT:  Your Honor, if I may?

23       THE COURT:  Yes.

24       MR. KWIAT:  Just so it's abundantly clear to my

25  client, with respect to the actual document, the plea

```
 1    agreement, will that remain under seal?

 2              THE COURT:  Yes.  Yes.

 3              MR. KWIAT:  In the clerk's office?

 4              THE COURT:  Again, I'm making no ruling with regard to

 5    whatever disclosure requirements may be necessary in another

 6    court or another proceeding.

 7              MR. KWIAT:  Yes.

 8              THE COURT:  And whatever obligations the United States

 9    or any other jurisdiction may have is not trumped by that, but

10    with that exception, otherwise, everything remains under seal,

11    as indicated.

12              MR. KWIAT:  Thank you.

13              THE COURT:  All right.  Is there anything further,

14    Mr. Bator?

15              MR. BATOR:  Nothing from the government, your Honor.

16              THE COURT:  Mr. Kwiat?

17              MR. KWIAT:  Nothing, your Honor.

18              THE COURT:  Okay.  Thank you.  We'll stand in recess.

19              MR. BATOR:  Thank you, your Honor.

20

21              (At 11:40 a.m., Court was adjourned.)

22

23

24

25
```

1                      C E R T I F I C A T E

2

3              I, Marianne Kusa-Ryll, RDR, CRR, Official Court

4     Reporter, do hereby certify that the foregoing transcript,

5     consisting of 30 pages, is a true and accurate transcription of

6     my stenographic notes in Case No. CR 06-40019-FDS-1, The United

7     States of America versus Derrick Anthony Watters, before

8     F. Dennis Saylor, IV, on August 29, 2007, to the best of my

9     skill, knowledge, and ability.

10

11

12    /s/ Marianne Kusa-Ryll                Dated:  11/19/2009

13    Marianne Kusa-Ryll, RDR, CRR

14    Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25